IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** : | | |
| : | | |
| v. : | **CRIMINAL ACTION** | |
| : | No. 23-403 | |
| **RAEKWON CANTEY** : | | |
| : | | |

McHUGH, J.                                                                                                           September 11, 2024

**<u>MEMORANDUM</u>**

Defendant Raekwon Cantey is charged with unlawful possession of a firearm and moves to suppress certain physical evidence and statements the Government will seek to introduce into evidence.  A hearing was held at which the prosecution presented testimony from one of the arresting officers from the City of Philadelphia police department, buttressed by body camera footage and the radio transmission that initially focused suspicion on Mr. Cantey as a suspect.  I am persuaded by a preponderance of the evidence that "each individual act constituting a search or seizure under the Fourth Amendment was reasonable," *United States v. Ritter,* 416 F.3d 256, 261 (3d Cir. 2005), and will therefore deny the motion to suppress.

The crux of the defense motion is that the police did not have a sufficient basis on which to suspect Mr. Cantey of having engaged in any criminal conduct based on the description sent by dispatch, colloquially referred to as "flash information."  Defense counsel very capably argues from *United States v. Brown*, 159 F.3d 147, 149 (3d Cir. 1998) and related cases that the details relayed by dispatch were too generic to support a reasonable suspicion justifying an investigatory stop.  But the officers here had far more on which they could reasonably rely in stopping and frisking Mr. Cantey.

By way of background, on April 12, 2023, an armed robbery was reported to police as having occurred at Jasper and Orleans Streets in the Kensington section of Philadelphia. The suspect was described as a black male approximately 5'8" in height, wearing a white shirt, grey pants, and a black mask, last seen heading in the direction of the Quick Mart on Kensington Avenue. Four Philadelphia police officers were on foot patrol in the neighborhood, on Orleans Street in between the Quick Mart[1] and the scene where the robbery occurred, at Jasper and Orleans Streets. They were assigned to the area as part of a surge of officers seeking to promote security in the community.

Shortly after receiving this alert, Officer Gregory Caruso saw an individual in a white shirt and grey pants holding something black in his hand walking away from Kensington Avenue, where the Quick Mart is located at intersection with Orleans Street. The officer's testimony as to what he observed is confirmed by his body camera. The flash information was accurate, except that Mr. Cantey is taller. This individual turned right onto Ruth Street, followed by the officers. As he was walking away from the officers, the body camera confirmed testimony by Officer Caruso that Cantey appeared to be holding his waistband as he walked. One officer called to him "come here," at which point Mr. Cantey can be observed looking back over his shoulder. Upon a repeat command of "come here, dude," Mr. Cantey breaks into a run, crosses the street, and continues fleeing until he is tackled by one of the officers, who is then joined by two others attempting to subdue him. Mr. Cantey refused to give his hands to the officers and struggled to escape, and in the course of the struggle one of the officers shouted a typical warning used by police - "gun." After he was handcuffed, a search of his person recovered a handgun and painkilling drugs.

---

[1] The actual name is Quick 24 Hour Stop.

As a threshold matter, I conclude that Mr. Cantey did not submit to police authority, and therefore was not seized, until he was tackled by one of the officers.  In *United States v. Smith,* 575 F.3d 308 (3d Cir. 2009), police ordered a pedestrian to put his hands on the hood of their patrol vehicle.  He took two steps in their direction, and then fled as the officers started to exit the vehicle.  *Id.* at 311.  The Court of Appeals held that given the suspect's flight, his momentary initial compliance could not be deemed a submission to police authority.  Here, Cantey did not even comply initially.  He looked over his shoulder in response to the directive "come here," and then fled immediately after the second command.  There is no evidence that any officer displayed a weapon.  As a result, Mr. Cantey's flight is properly considered in determining whether the officers had "reasonable suspicion" to stop him.  *See United States v. Palmer,* Criminal Action No. 16-282, 2017 WL 1303477, at *2 (E.D. Pa. Apr. 7, 2017) (McHugh, J.).

If substantial time had elapsed between the flash description and apprehension of Mr. Cantey, the defense argument would carry greater force.  But here, officers had not only a description, but Mr. Cantey was first observed walking away from the Quick Mart which was consistent with the report from dispatch.  He can be seen holding his hands in front of him, apparently holding his waist band, a phenomenon that officers associate with trying to carry an unholstered handgun.  In that regard, the body camera footage clearly shows Mr. Cantey wearing athletic pants with an elastic waistband, which would be insufficient to support the weight of a gun.  And the property receipt introduced as Defense Exhibit 16 reflects that its magazine was almost fully loaded with ten rounds, adding to the weight Cantey would have to support while walking.  There was a legitimate basis for considering the area to be high in crime, and in fact the officers were specifically detailed there because of the persistent problems encountered in the neighborhood.  Finally, as soon as police asked him to "come here," he took flight.  When taken

in combination, the description, direction of travel, proximity of time and place to the report of the crime, flight, and position of Mr. Cantey's hands while running, are more than sufficient to justify the stop.  *Johnson v. Campbell,* 332 F.3d 199, 206 (3d Cir. 2003); *United States v. Harple,* 202 F.3d 194, 196 (3d Cir. 2000); *United States v. Graves,* 877 F.3d 494, 499 (3d Cir. 2017).

When a suspect flees officers may use reasonable force to accomplish the stop, and tackling a suspect is permissible, and even when such force is used a stop is not automatically transformed into an arrest.  *United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004); *United States v. Shambry*, 392 F.3d 631, 635-636 (3d Cir. 2004).  In stopping a suspect, officers can conduct a pat-down for weapons as a precaution if they can point to specific and articulable facts that reasonably support an inference that they might be in danger.  *United States v. Kithcart,* 218 F.3d 213, 219 (3d Cir. 2000).  Here, given that the police were responding to a call for gunpoint robbery, the position of Mr. Cantey's hands while running, and his resistance when stopped, all support an inference that police had a legitimate concern that he could be armed, justifying a protective search even before there were grounds to arrest.  And the discovery of the gun provided probable cause for arrest, *United States v. Starkey,* No. 13-654-1, 2014 WL 5810659, at *7-8 (E.D. Pa. Nov. 4, 2014), followed by a lawful search of Mr. Cantey's person incident to arrest.  *United States v. Lewis*, No. 22-341, --- F.Supp.3d ----2024 WL 150334 at *10 (E.D. Pa. Jan. 12, 2024).  Based on the analysis above, I conclude that the gun and controlled substances were properly seized.

As to statements made at the time of arrest, while the Government concedes Cantey was in custody, nothing captured on the body camera video said or done by police was "reasonably likely to elicit an incriminating response from the suspect." *United States v. Brownlee,* 454 F.3d 131, 146 (3d Cir. 2006).  "Volunteered statements of any kind are not barred by the Fifth Amendment."

*Miranda v. Arizona,* 384 U.S. 436, 478 (1966).  Consequently, Mr. Cantey's comments captured on the body camera are admissible.

Finally, as to DNA, Mr. Cantey's challenge cannot succeed because the evidence forming the basis for the search warrant was properly obtained, with the result that there is no need to reach the Government's contention that the officers relied on the warrant in good faith.

The motion to suppress will be denied in its entirety.  An appropriate order follows.


    /s/ Gerald Austin McHugh
    United States District Judge

5